NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

BROWN AND CONNOLLY,
INC., Respondent.

No. 78–1421.

United States Court of Appeals,
First Circuit.

Argued March 6, 1979.

Decided March 23, 1979.

Joseph A. Oertel, Atty., Washington, D. C., with whom John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and John G. Elligers, Atty., Washington, D. C., were on brief, for petitioner.

Philip C. Schneider, with whom Brown, Rudnick, Freed & Gesmer, Boston, Mass., was on brief, for respondent.

Before ALDRICH and CAMPBELL, Circuit Judges, and CAFFREY, District Judge *.

ALDRICH, Senior Circuit Judge.

This is an application for enforcement of an NLRB order arising out of an employer's alleged failure to abide by its oral recognition of a union in violation of sections 8(a)(1) and (5) of the Act. 29 U.S.C. §§ 158(a)(1) and (5) (1976). Before addressing the facts we recite briefly the course of the Board's position on recognition short of an election. At one time the Board ruled that an employer faced with a demand prima facie supported, as with authorization cards apparently signed by a majority of its employees, was obligated to bargain, absent some good faith reason to doubt the union's showing. We accepted this principle. *NLRB v. Whitelight Products*, 1 Cir., 1962, 298 F.2d 12, *cert. denied*, 369 U.S. 887, 82 S.Ct. 1161, 8 L.Ed.2d 288; *NLRB v. Gorbea, Perez & Morell*, 1 Cir., 1962, 300 F.2d 886. Thereafter the question arose in a modified form, where, after rejecting the union's demand supported by a showing of cards, the employer engaged in unfair labor practices. Although even here some circuits did not, we again agreed with the Board, and held that the employer's conduct making a fair election impossible destroyed any right it might otherwise have had to demand an election. *NLRB v. Sinclair Co.*, 1 Cir., 1968, 397 F.2d 157. On certiorari to resolve the conflict, we were affirmed. *NLRB v. Gissel Packing Co.*, 1969, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547.

After *Gissel*, perhaps recognizing the criticisms there expressed of the consequences of organization without the protection of secret elections and without permitting the employer to be heard, *see* 395 U.S. at 602–05, 89 S.Ct. at 1934–1935, the Board took the position that, absent other violations, the em-

---

* Sitting by designation.

ployer had a right to require an election regardless of the union's showing. In this it was supported by the Court. *Linden Lumber Division v. NLRB,* 1974, 419 U.S. 301, 95 S.Ct. 429, 42 L.Ed.2d 465. On the other hand, if the employer once recognizes a majority union, no matter how informally, the Board holds that the right is lost. *NLRB v. Gogin,* 7 Cir., 1978, 575 F.2d 596, 604–05; *NLRB v. A. Lasaponara & Sons, Inc.,* 2 Cir., 1976, 541 F.2d 992, 995–96, *cert. denied,* 430 U.S. 914, 97 S.Ct. 1325, 51 L.Ed.2d 592; *Jerr-Dan Corp.,* 1978, 237 N.L.R.B. No. 49, 1978 CCH NLRB ¶ 19,497. This is the present case.

On September 14, 1976, 11 of the respondent's 17 employees,[1] together with two union organizers, called on respondent's president, Brown, at his office, unannounced, and followed what would appear to be a predetermined script to obtain an admission from Brown that he "recognized" the union. ("Do you recognize that we are a majority of your employees?" "Do you recognize that we all wear union buttons?" etc., etc.) Caught unprepared, with no prior knowledge of organizational activity, and quite possibly unaware of an employer's right to require an election, Brown ultimately, according to the credited testimony of the employees, said the magic word. Although it took a little longer, even on General Counsel's case the whole meeting might remind chess players of the fool's mate.

We could have some sympathy with respondent's attempt to require an election,[2] asserted promptly, and before any further steps had been taken, and when, at best, Brown had been the victim of an orchestrated encounter, 13 to 1, with considerable variation among those testifying against

him.[3] However, even if we were the policy-maker, we would not quarrel with the Board's rule that once an employer has affirmatively agreed to recognize a union, it cannot change its mind. The facts in this case might suggest the desirability of a rule that recognition must be clearly and convincingly evidenced, and not dependent upon a staged performance and resolution of disputed, possibly perjured, testimony, which may have fostered here, at least in part, the very strife the Act is intended to prevent.[4] While voluntary recognition may be favored, *NLRB v. Broadmoor Lumber Co.,* 9 Cir., 1978, 578 F.2d 238, 241, recognition versus election does not seem to us that important. The argument made to us, that if an employer could change its mind it would lead to unfair labor practices in an attempt to cause the union to lose the election, would also undercut the Board's policy recognized in *Linden Lumber Division,* ante, an inconsistency counsel for the Board avoided by not citing the case. We consider such policy matters, however, to be outside our province. *Cf. id.,* 419 U.S. at 309–10, 95 S.Ct. 429. Equally, we reject respondent's request that we reverse the Board's evidentiary findings.

*The order of the Board is to be enforced.*

---

1. The company concedes that these employees constitute an appropriate unit.

2. No sympathy can be expected, however, in regard to respondent's conduct subsequent to its refusal to bargain which resulted in the Board's finding several unfair labor practices which respondent does not here contest. In light of our resolution, it is unnecessary to remand to the Board for a determination whether, given these violations, a fair election became impossible under *NLRB v. Gissel Packing Co.,* 1969, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547.

3. Particularly, we note that this gave the ALJ a variety of General Counsel's witnesses to choose from for "principal reliance."

4. *Cf. NLRB v. Gogin,* ante, where the court accepted the Board's resolution of a telephone conversation, that the employer's attorney had perjured himself, without "intend[ing] adverse reflection upon counsel whatsoever." 575 F.2d at 605. A disputed telephone call seems an unhappy way of resolving the important question whether a union represents the employees.